EMBRY, Justice.
This is an appeal from a final judgment in favor of Liberty National Life Insurance Company, entered upon a jury verdict, in an action by Kathryn M. Glover seeking to recover benefits under policies of insurance, in which she was the named beneficiary, on the life of her husband, Wilfred Glover, payable on account of accidental death. We affirm.
Liberty National had issued several policies of insurance on the life of Wilfred Glover, two of which had been in effect for less than two years. Each of those two policies contained the following provision:
5. SUICIDE — If the insured within two years from the effective date of this policy shall commit suicide, whether sane or insane, the amount payable under this policy shall be a sum equal to the premiums thereon which have been paid to and received by the company less any indebtedness to the company.
The other policies provided double indemnity if the death of the insured resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means.
On 6 April 1979, Wilfred D. Glover was found dead in his mobile home located on Route Two, West Blocton, in Bibb County. At the request of the Sheriff of Bibb County, Sergeant Charles Graham, a criminal investigator of the Department of Public Safety, Alabama Bureau of Investigation, went to Glover’s mobile home and conducted an investigation and examination. This included, among other things, the taking of numerous photographs and examination of certain pieces of physical evidence, including two rifles, a spent cartridge, a shell casing, ammunition, gun cleaning rods, and other materials.
When Liberty National refused to pay the additional monies representing double indemnity on the policies which had been in effect for more than two years, and refused to pay the accidental death benefits on the policies in effect less than two years, Mrs. Glover filed this action seeking all those benefits. Liberty National answered that it was not liable because Wilfred Glover had committed suicide. It tendered to the clerk of the circuit court the premiums which had been theretofore paid on the two policies in effect less than two years. The action was tried to a jury which resolved the issues in favor of Liberty National. Judgment was entered accordingly, whereupon Mrs. Glover perfected this appeal.
Mrs. Glover states the issue for review as error in allowing a witness to give his opinion to an ultimate issue of fact in the case (thus invading the province of the jury).
Each allegedly erroneous ruling is claimed to have occurred in the course of the testimony of Sergeant Graham. At the outset, let it be noted that the evidence is ample to show that he was properly qualified to testify as an expert. As a matter of fact, in her brief, Mrs. Glover does not take issue with Liberty National about the qualifications of Sergeant Graham and makes no statement in it that he was unqualified to give opinions about the matters concerning which he was questioned. She urges that he was erroneously permitted to answer the following questions, in the manner shown, following the objections as they appear:
Q. Now, if you would, Sergeant Graham, show the ladies and gentlemen of the jury how you go about loading and firing that rifle.
MR. BOGGS: Your Honor, we’re going to object to his demonstration because there’s no proof that the gun was loaded other than it had one shell in the magazine or any evidence that the deceased pumped the gun or anything else. There’s no eyeball witnesses to this death.
THE COURT: Overruled.
Q. Go ahead, please sir, and show us how that is done.
*36 A. Normally, this would be loaded from a cord here in the magazine chamber; it would drop in with the shiney part or the bullet part up. You close it. And lock it. And you apply pressure to it. If the bolt were closed at the time it was loaded and nothing in the chamber this lever here you’d push it and pull it back and shut it and that would put one round in the chamber and every time it was fired you could continue firing until it was empty. It can also be that one round may be inserted through the—
MR. BOGGS: Your Honor, this is unresponsive to the question.
THE COURT: No, sir, he asked him to operate the gun and he’s continuing his answer; overruled.
* * * * * *
Q. Now, please sir, tell us whether or not you have a judgment — Well, let me ask you this. Do you know, please, sir, what causes these trauma marks?
MR. BOGGS: Your Honor, we’re going to object to his answer as it would be an opinion and he’s not qualified; he’s not a medical expert nor is he a pathologist or a toxicologist. He’s not qualified to answer.
MR. BLAN: He’s had a lot of experience in the field of forensic sciences.
THE COURT: Overrule the objection. I think from this man’s training and experience he can give an answer.
MR. BOGGS: We except.
Q. From your reading and studying and knowledge Sergeant Graham, do you know what causes trauma marks around a gunshot wound?
A. Yes, sir.
Q. Tell the ladies and gentlemen of the jury what that is.
A. When a gunshot wound to the body is fired and the barrel is in contact with or near contact with or loose contact with the gases from the projectile or that send — sends the projectile forward go into the wound; the wound is actually— the skin is blown back against the gun barrel which leaves a trauma mark or a bruise. It will actually take on the shape of the end of the barrel.
* * * * * *
Q. Now, based on your observation and your training and what you saw down there on Mr. Glover, Sergeant Graham, do you have an opinion as to whether or not the gun barrel or the gun which fired that bullet into his head was in contact or against his head at the time it was fired?
MR. BOGGS: Your Honor, we object. This takes it out of the province of the jury.
THE COURT: Overruled.
Q. Do you have an opinion?
A. Yes, sir.
MR. BOGGS: We except.
Q. What is your judgment, please, sir?
A. The gun barrel was in contact with the head.
Mrs. Glover says the rulings shown above were injurious in that the answers invaded the province of the jury because those answers constituted the witness’s opinion of the ultimate fact in issue in the case: Glover was a suicide. One will instantly observe that in only one instance, either specifically or implicitly, was that reason made the basis of any of the objections. In that single instance the question in no way could be construed as calling for an answer regarding the ultimate fact in issue: suicide.
We noted earlier that there was no question of the witness’s qualifications to render expert opinions in the area of inquiry of the questions put to him. From an examination of the record, we do not hesitate to opine that it would have been an abuse of discretion upon the part of the trial judge had he sustained proper objections to the questions set out. Cf. Trans-Southern Life v. Johnson, 287 Ala. 620, 254 So.2d 321 (1971); Glaze v. Tennyson, 352 So.2d 1335 (Ala.1977); Sharp v. Argo-Collier Truck Lines Corp., 356 So.2d 147 (Ala.1978); Dyer v. Traeger, 357 So.2d 328 (Ala.1978).
Finding no error in the record of the trial of this case, we find it appropriate that the *37 judgment below be affirmed; therefore, it is hereby affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and ADAMS, JJ., concur.